## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-01708-SCT

*BERNARD TAYLOR, JR. a/k/a BERNARD*
*TAYLOR*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/10/2012 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN T. COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/01/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    This case arose out of a shooting incident that occurred due to tensions between two

rival teenage gangs. Sixteen-year-old Bernard Taylor fired multiple shots into a car

containing five people, wounding three of them. He was charged with three counts of

aggravated assault, with each count alleging a firearms enhancement under Mississippi Code

Section 97-37-37.[1] The trial court denied Taylor's proposed jury instruction on the lesser-included offense of simple assault. Taylor was granted a self-defense instruction. The jury was not instructed on the firearms enhancement. Taylor was convicted of one count of aggravated assault. At a separate sentencing hearing, Taylor received a twenty-year sentence for aggravated assault and a five-year sentence for a firearms enhancement, to run consecutively.

¶2.     On appeal, Taylor argues that the district court erred by denying the assault instruction, and that the five-year sentence enhancement should be vacated either under the United States Supreme Court case *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) or, alternatively, under double jeopardy. We find that Taylor's arguments are without merit and affirm the judgment of the circuit court.

### FACTS AND PROCEEDINGS BELOW

¶3.     On the evening of January 1, 2011, and into the morning of January 2, 2011, Jessie Whitfield and his brother Chris were taking a ride home from a party near the Jackson Medical Mall with their friends Jasmyn, Meyhatta, Latisha, and Raven. Latisha was driving, and Raven was sitting in the front passenger seat. Jessie was sitting by the driver's side door in the back seat, Jazmyn was beside him in the middle, and his brother Chris was on the

---

[1] "Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended." Miss. Code Ann. § 97-37-37 (Rev. 2006).

passenger side in the back seat with Meyhatta on his lap. As they were about to pull out of the parking lot, they heard gun shots nearby, and Chris got out to see if he could tell where the shots were coming from. Chris got back into the car, and just after he shut the door, a car pulled up beside them with Taylor in the back passenger seat. Jessie told the others in the car, "there go Bernard," and "they fixing to shoot us. Fixing to shoot." Taylor started shooting. Jessie, Jazmyn, and Meyhetta were shot. They testified that none of them had a gun in the car that night. Jessie testified that he had seen Taylor inside at the party but did not speak to him.

¶4. Diallo Vaughn was in the car with Taylor. He testified that a car pulled up beside them and that they saw a gun. He said at the time he did not know it was Jessie with the gun, and that he did not see anyone else in the car other than Jessie. He testified that the gun was pointing at them, that Taylor shot Jessie because he was trying to protect himself, and that Taylor was not trying to shoot Raven or Meyhatta.

¶5. After the shooting, the police and an ambulance were called. Several of the victims identified Taylor as the shooter. He was picked up the next day at school and questioned by Detective Eric Smith and Detective Delars Smith. They took the following statement from him:

> I was at the party. The police put me out of the club and I went to the car. I sat in the car and waited until the party was over for my friend. My friend came out of the party. They came and got me.

> Another group of guys were together. They were all ready–they were–there were ready to fight my friends. We got in the car. We started leaving out of the parking lot. They pulled up beside us. I looked to the right and seen them and I shot. We drove out of the parking lot after I shot. I am very sorry for what I did and it will never happen again.

¶6. Taylor told the officers that he was shooting at boys from a rival gang who were riding in a brown, four-door car. He told the officers that he fired four shots into the back driver side and that he was the only one to shoot into the car. Taylor did not mention that anyone in the other car showed him a gun or shot at him. Detective Smith testified that, at the scene, he saw four bullet-impact sites on the rear driver's door of the victims' car.

¶7. At trial, Taylor testified on his own behalf. He said that as he was driving away from the party, Diallo told him that someone in the car to their right had a gun, that he ducked down, grabbed his gun, and saw Jessie with a gun pointed at his face. He thought Jessie was about to shoot, so he started shooting.

¶8. Felicia Robinson, a Mississippi Crime Laboratory employee, testified that the ten shells found at the scene could be separated into two groups of five, fired from two different weapons. She did not have any information about the crime scene or the location in which the shells were found at the crime scene.

## DISCUSSION

### I. Whether Taylor was improperly denied a simple-assault, lesser-included-offense instruction at trial.

¶9. Taylor first argues that he was improperly denied a jury instruction on the lesser-included offense of simple assault. Taylor argues that the presence of shell casings from multiple guns at the scene supports the theory that he shot negligently under the mistaken belief that nearby gunshots were intended for him. "When jury instructions are challenged on appeal, we do not review them in isolation; rather, 'we read them as a whole to determine if the jury was properly instructed.'" ***Rubenstein v. State***, 941 So. 2d 735, 787 (Miss. 2006)

4

(quoting *Goodin v. State*, 787 So. 2d 639, 657 (Miss. 2001)); *Milano v. State*, 790 So. 2d 179, 184 (Miss. 2001). "[T]he court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991). A lesser-included-offense instruction must be refused if the circuit court finds that "taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences that may be drawn from the evidence in favor of the accused, that no hypothetical jury could find the fact as the accused suggests." *Williams v. State*, 53 So. 3d 734, 741 (Miss. 2010).

¶10. To be entitled to a lesser-included-offense instruction, the defendant must point to evidence from which a jury reasonably could find him not guilty of aggravated assault and at the same time find him guilty of simple assault. *Ladnier v. State*, 878 So. 2d 926, 932 (Miss. 2004). "Only where the evidence could only justify a conviction of the principal charge should a lesser offense instruction be refused." *Mease v. State*, 539 So. 2d 1324, 1330 (Miss. 1989). "Once a deadly weapon is introduced, the distinction between simple and aggravated assault . . . hinges upon whether the injuries were inflicted negligently or intentionally." *Jackson v. State*, 684 So. 2d 1213, 1230 (Miss. 1996).

¶11. Taylor's trial testimony and choice of self-defense argument establish that he intentionally shot Jessie. In denying Taylor's request for a lesser-included-offense instruction on simple assault, the trial court relied on this Court's opinion in *Ford v. State*, 975 So. 2d 859 (Miss. 2008), in which we held in regard to simple assault:

> Because [the defendant] used a deadly weapon, there must be evidence that she acted negligently in causing harm to Gaddy: "A person is guilty of simple assault if he . . . negligently causes bodily injury to another with a deadly

5

weapon." Miss. Code Ann. § 97-3-7(1) (Rev. 2006). **In the present case, it is undisputed that [the defendant] intentionally stabbed [the victim]. According to her own testimony, [the defendant] stabbed [the victim] with the knife in self-defense . . . .**

*Id*. at 865 (emphasis added.)

¶12.    As in *Ford*, Taylor testified and argued at trial that he intentionally shot at Jessie in self-defense because Jessie had a gun and pointed it at him. He did not argue at trial that he acted negligently under the mistaken belief that undisputed gunshots near the scene were intended for him. Based on the presence of a deadly weapon and Taylor's concession that he intentionally shot at Jessie, the evidence justified either "a conviction of the principal charge" or acquittal based on a theory of self-defense. The evidence does not demonstrate negligence. Therefore, the trial court did not err by denying the simple-assault instruction.

II.    **Whether Taylor's five-year firearms sentencing enhancement should be vacated**.

A.    *Whether the enhancement violates Apprendi v. New Jersey*.

¶13.    Taylor next argues that reversal of his five-year sentence enhancement is mandatory because the enhancement violates the United States Supreme Court's holding in *Apprendi*, which states: "[o]ther than the fact of a prior conviction, any *fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (emphasis added). The maximum sentence for aggravated assault is twenty years; when combined with the five-year firearms enhancement, Taylor's twenty-five year sentence is subject to an *Apprendi* analysis because it exceeds the prescribed statutory maximum for the offense. We find that, because the jury did decide every fact necessary to satisfy the elements of the sentencing

6

enhancement –in particular, Taylor's use of a firearm–the *Apprendi* standard is satisfied and reversal of the enhancement is not required.

¶14.    Taylor attempts to argue that *Apprendi* requires the actual sentence enhancement itself to be found by the jury. But that is not the law. The trial judge may impose the sentence enhancement once the jury has found all of the facts necessary to satisfy the elements of the sentencing-enhancement statute. *Apprendi* requires the jury to find not the sentence enhancement itself, but every *fact* required for the sentence enhancement to be imposed. The jury having found all of the necessary facts, the trial judge has the authority to impose the sentence.

¶15.    This Court applied *Apprendi* in *Brown v. State*, 995 So. 2d 698 (Miss. 2008). In *Brown*, the Court vacated a sentence enhancement because reasonable doubt existed as to the question of whether the sale of a controlled substance occurred within 1,500 feet of a church. *Id*. at 704. The proximity to the church was a required *fact* for satisfying the elements of the sentencing-enhancement statute. *Id*. This Court held that "[t]he existence of a church within 1,500 feet of Brown's crime . . . is a *fact* that he was entitled to have determined by a jury." *Id*. at 703 (emphasis added).[2]

---

[2] While this Court's holding in *Brown* is clear ("[t]he existence of a church within 1,500 feet of Brown's crime. . . is a *fact* that he was entitled to have determined by a jury")(emphasis added), the opinion in other places states arguably more broadly "[u]nder *Apprendi*, Brown enjoyed a Sixth Amendment right to have the issue of his sentence enhancement submitted to a jury." *Brown*, 995 So. 2d at 704. We clarify that this language in *Brown* does not mean that the jury itself must impose the sentence enhancement.

¶16.	Here, unlike in *Brown*, the jury found all of the facts necessary to satisfy the elements of the sentencing-enhancement statute. In particular, the jury found the fact that Taylor used a firearm. Jury Instruction S-3B read:

> The Defendant is charged by indictment in Count Three with Aggravated Assault. If you find from the evidence in this case, beyond a reasonable doubt, that:
>
> 1. The Defendant, on or about the 2nd day of January, 2011, in the county aforesaid and within the First Judicial District of Hinds County, Mississippi;
>
> 2. Did purposely or knowingly cause serious bodily injury to another, JESSIE WHITFIELD, a human being;
>
> **3. By shooting said person with a deadly weapon, a firearm**;
>
> then you shall find the Defendant guilty of Aggravated Assault. If the State has failed to prove any one or more of the above elements beyond a reasonable doubt then you shall find the Defendant Not Guilty.

(Emphasis added.) The jury found all of the facts required for the judge to impose the five-year sentence enhancement, and, therefore, this Court is not required to reverse the sentence enhancement under *Apprendi*.

B.	*Whether Taylor's sentence enhancement violates double jeopardy*

¶17.	Finally, Taylor argues that the imposition of the sentence enhancement violates his protection against double jeopardy because it constitutes multiple punishments for the same offense, and the sentencing-enhancement statute requires proof of the same elements as the underlying crimes. The Mississippi Court of Appeals has addressed this issue multiple times, including in *Lewis v. State*, 112 So. 3d 1092 (Miss. Ct. App. 2013). Lewis argued that the imposition of separate sentences under Mississippi Code Sections 97-37-5 and 97-37-37(2)

8

violated his double-jeopardy protection against multiple punishments for the same offense. The Court of Appeals disagreed, finding that "Section 97-37-37(2) merely imposes an elevated sentence for use or display of a firearm during the commission of a felony, and it does not delineate an independent substantive offense." *Id*. at 1096. The Court of Appeals was correct in this analysis. The Legislature intended for these two punishments to apply to the same offense, therefore there is no double-jeopardy concern. *See **Mayers v. State***, 42 So. 3d 33 (Miss. Ct. App. 2010); ***Wansley v. State***, 114 So. 3d 793 (Miss. Ct. App. 2013).

**CONCLUSION**

¶18.   The trial court properly denied the lesser-included-offense jury instruction. The jury found every fact necessary for the trial court to impose the five-year sentence enhancement. Finally, Taylor's argument that the sentence enhancement violates double jeopardy fails because it does not constitute a separate punishment for the same offense and is within the sentence allowed by the Legislature for the offense when the aggravated assault and enhancement statutes are read together. The conviction and sentence of the Hinds County Circuit Court are affirmed.

¶19.   **CONVICTION OF AGGRAVATED ASSAULT WITH GUN ENHANCEMENT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT IS SENTENCED FOR AN ADDITIONAL FIVE (5) YEARS FOR THE GUN ENHANCEMENT AND IS GIVEN CREDIT FOR TIME SERVED. SENTENCES SHALL RUN CONSECUTIVELY.**

   **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

9